## FIDELITY & CASUALTY COMPANY OF NEW YORK v. PEOPLES NATIONAL BANK.[1]

February 16, 1940.

No. 32,290.

[1]Reported in 290 N. W. 305.

*Henry F. Prinz* and *Phillips, Sherwood & Hughes,* for appellant.
*Lystad, Mantor & Day,* for respondent.

PETERSON, JUSTICE.

The claim is that one Penrose as administrator of the estate of Gust Larson, deceased, defendant as his depository, and plaintiff as his surety agreed that withdrawals by the administrator on the depository should be only on the countersignature of plaintiff. The administrator made a withdrawal of $3,000 without such countersignature, in consequence of which plaintiff was compelled to pay as the administrator's surety the sum of $2,349.30 to the state of Minnesota to make good a shortage in the residue of the estate, which was escheated. This action is brought to recover for the breach of the agreement the amount so paid.

The only issue is whether or not the defendant was a party to the agreement. By its terms the agreement is between Penrose, as special administrator, and the other parties. It bears date December 19, 1934, as to Penrose and plaintiff. At that time Penrose was the special administrator of the estate of Gust Larson and had filed a petition for letters of general administration. On January 18, 1935, an order appointing Penrose general administrator was made and filed. A general administrator's bond with plaintiff as surety, dated January 7, 1935, was filed and approved on January 19, 1935. Meanwhile an order had been made approving Penrose's final account as special administrator and discharging him upon filing of a proper receipt that he had paid the assets to the general administrator. On January 19, 1935, defendant signed the joint control agreement.

The contention of the defendant is that it appears from the face of the agreement that its undertaking was limited to withdrawals by Penrose as special administrator and that, since it ap-

pears that the withdrawal involved here was by him as general administrator, there was no breach of the contract to which it was party.

The finding below was that the agreement was for joint control of the funds of Penrose as general administrator. There was evidence that Penrose opened an account with defendant as "R. G. Penrose, Administrator of the Estate of Gust Larson," during the time he was acting as special administrator. He continued with this account after he was appointed general administrator without opening a new one or a cutoff of any kind. Two of the officers of defendant acted as appraisers in both the special and general administration. The inventory and appraisement in the general administration were filed on January 18, 1935, the day before defendant executed the joint control agreement. By the inventory and final account Penrose receipted for the property, which he had held as special administrator. There was no longer anything further for him to do in the last mentioned capacity, as defendant's officers must have known. Apparently the purpose of signing the joint control agreement related to withdrawals to be made beginning as of the 19th, which were to be made only by Penrose as general administrator. Whatever doubt there may be as to the agreement is resolved by the testimony of the administrator's attorney that it "was the understanding" that no checks for withdrawals by the general administrator were to be paid by defendant without the countersignature of plaintiff. This understanding was observed as to all other withdrawals, which were considerable in number.

Whether or not defendant was a party to the joint control agreement between the general administrator and the surety was a fact question. The evidence that the general administrator took over the special administrator's bank account with the understanding that withdrawals were to be subject to the joint control agreement, to which defendant gave its assent by signing the agreement when the general administration began, sustains the finding that defendant became a party to the agreement. The

fact that the joint control agreement was executed originally by the administrator and the surety to cover the special administration is not decisive the other way for the reason that the evidence shows that the purpose of defendant's signing was to give the surety joint control of the general administrator's bank account and that such was the understanding.

No question was raised below, or here, as to whether or not such a joint control agreement was binding on the administrator, or whether the defendant could raise that question. See Fidelity & Deposit Co. v. Butler, 130 Ga. 225, 60 S. E. 851, 16 L.R.A. (N.S.) 994, and note, citing McCollister v. Bishop, 78 Minn. 228, 80 N. W. 1118; 12 Am. Jur., Contracts, § 179, p. 679, note 12; 9 C. J. S., Banks and Banking, § 338, p. 681, note 76. We intimate no opinion as to such questions, although we have not overlooked them, and decide only the issue presented.

Affirmed.

